Okay, we are going to hear the last case of the day, Walker v. Life Ins. Co. of the SouthWest. There are cross appeals here, but we should try to keep the sides together, so go ahead. May it please the Court, Noah Levine v. Life Ins. Co. of the SouthWest. As you noted, Your Honor, this oral argument involves two appeals. First, plaintiff's appeal lacks merit for, at minimum, two primary reasons. First, their appeal, which is specifically and only of the District Court's reconsideration decision, is procedurally improper because it is not an order that is granting or denying class certification. And second, regardless, the District Court acted well within its discretion in declining to certify a class that would be so broad as to include policyholders who only received what we call a batch illustration concurrent with policy delivery, given that there was no evidence that anyone was ever injured or relied on a batch illustration to purchase and that it is not coextensive with plaintiff's case. For our appeal, we believe the District Court committed legal error because it refused to consider under Rule 23b-3's predominance requirement what was acknowledged and not disputed to be the need for individualized determinations on the key issue in this case, which is whether individual class members even received sales illustrations from independent agents and brokers who sold LSW's policies. We believe that refusal contradicts the text of Rule 23, is not required by this Court's decision in Bresenio, and indeed contradicts the rationale of that decision, which is that all of the textual requirements of Rule 23 should be applied and would be reversible error in a court of appeals like the Second Circuit, where in Petrobras they agreed with this Court that there is not an administrative feasibility requirement. They agreed that manageability can be evaluated under the superiority prong and nonetheless vacated class certification in that case because the District Court had not looked at the same individualized issues through the rubric of the predominance requirement. Well, as I understand it, the District Court found that all of the plaintiffs were exposed to the illustrations and that gave rise to a presumption of reliance. So doesn't that eliminate the concern with regard to predominance here? The District Court said that once you define the class as every – if we're talking about our appeal right now, Your Honor, the District Court defined the class as everybody who received an illustration. So by definition, by logical necessity, once you have defined the class that way, then every person has received an illustration. I want to be very clear that whether it's in the definition or out of the definition, the point that we are making here is that when the key issue in the case, exposure to a sales illustration, is individualized, that has to be analyzed under predominance. And to your question, there is no evidence in this case that says every single policyholder received a sales illustration. That's plain in the record. But the class was limited to those who received an illustration, correct, which was the narrower of the two definitions that the plaintiff class representatives proposed. So if the District Court was correct in limiting the class on the assumption that if they got an illustration, they presumably relied on it when they applied for the insurance policy, why do we have to look at individual plaintiffs in order to examine any further the illustration? Well, for two reasons, actually. Let me make it three reasons, although every time I say that, I forget the third by the time I get there. The first reason is the premise of your question is exactly what we're here on. You said if the District Court defined the class correctly, then why do we have to look at that? That's exactly what our appeal is about. Oh, no, it's not. Well, we're saying you can't define it that way because you have a predominance problem. But I take your point, Judge Rosline. You're saying if you've defined it that way, now we have to look at predominance. So my second point would be you could always do away with any individualized issue in a case by simply subsuming it into the class definition. You can simply say, okay, we know because, remember, this is not a case where the District Court just looked at everything, refused to certify. He actually certified a class like this before. This is the point. I understand your argument. This is my understanding. All right, go on. Third argument. I'll just say the third one is that Petrobras is exactly like that, the Second Circuit. It was in the definition. It was only people who had engaged in a domestic transaction. Okay, but why? That doesn't prevent them to look at it. I mean, this is maybe – I gather there's no argument that one does take account of this problem at the certification stage in the superiority analysis. So why do you have to do it twice? They are two different analyses. How? Exactly. Precisely how? In a way that would matter here. Sure, and I will say I think the Petrobras decision actually is very good on this and explains it. But Rule 23b-3 has two requirements. It's textual. AmChem said it at the Supreme Court, and this Court has said it repeatedly. There's a predominance requirement and a superiority requirement. Both involve a comparative assessment. They involve different comparative assessments. The superior – my apologies – the superiority prong asks you to say, okay, what would we do if we didn't have a class action here? What is more superior? Is certifying this Rule 23b-3 class superior to other alternatives? And some of those alternatives – And it seems like that has to take into account what part of the issues in the case are actually joint, right? The predominance question. Sure. Well, now let me flip to the predominance. But it has to take it. Well, I'm saying you can't decide the superiority question without determining whether there are a – whether the number of – the weight of the issues are not group – are not class issues, and so it's not superior. I don't think that's correct. I don't think the predominance requirement bleeds into the superiority requirement. Really? The superiority bleeds into the other. The predominant – superiority can simply be here's what it's going to look like if we try this class action. Here's the other alternatives. And some of the things that the advisory committee notes mention – Well, here's what we're going to look like includes we're going to have to decide 15 individual questions. That's absolutely true. But I think it's like what does the nature of the litigation look like? And one of the options that the advisory committee note says is you could have test cases. But the illustrations were all the same, were they not? Well, in this respect, in this case, yes, as to the two technical violations. But whether or not someone got the – what's not the same is a sales illustration versus a batch illustration. I understand. Okay, so the sales illustrations, yes, Your Honor. But let me finish my answer to you. But don't set the question of who's a member of the class come up all the time. I mean, if – just a minute. I mean, if you have a class of everybody who bought X product, right, at a certain time period, then when the issues have been decided, you have to figure out who were the people who bought the product, which when you're talking about, for example, you know, a bottle of milk could be a very – a bit of a project. This is a bit of a project. But the notion that it's a predominant bit of the project seems a little extreme. To be sure, I think we're very careful in our brief. We are not saying that every issue of class membership has the possibility to render the class not predominant. Well, I don't understand the difference. If you're not saying that, then what are you saying? The difference is that what we're saying is when a key element of the actual claim is an individual. Well, the question of who bought the milk is a key element, right? Oh, no. I mean, in the purchaser cases, like, for example, like let's take Bresenio as an example or Mullins as an example. In those cases, the claim is that there was a disclosure made that was, you know, not correct. If you certify the class not as everyone who received the disclosure, which jumps over the issue, but if instead you certify the class as all purchasers, you know because it's on the bottle that every purchaser who purchased it bought it. Yes, but you still have to prove who the purchasers are. But wait, but you know that what you do know is you can decide that case on a class basis, like this court pointed out in Bresenio. You know by the time you know that there is a total aggregate of liability. The company knows how many, you know, volumes of whatever they sold. You know that. You can try that for everybody. You can then have a determination of who is actually entitled to claim under that class. Yes, but here, I mean, here it's for a different reason. It's the one that Judge Tallman has been emphasizing or connected to something else. That this is a very specific claim with regard to these documents, which, and there is no reliance issue. No one seems to have backed out the reliance issue because everybody saw these and the reliance is being presumed. So, therefore, the question is the same to me as the purchaser question. Who were the people who, because first you're going to decide or you could decide the technical statutory questions as to what is on the illustration and whether it complies with the statute. And that's going to be true for whoever proves up to be in the class, right? And then you're going to get to the question of, okay, who's in the class? And why isn't that the same question as who bought the milk? It's a different question because, again, in this case, you have to actually show who received it. In that case, everyone who bought also got the disclosure. In this case, everyone who got a life insurance policy did not get the disclosure. Yes, but conceptually, why is it a different question? There is a question that, there are questions that pertain to the class as a whole, legal questions, right? Human questions, which the class has to find, right? Now you want to know, and that can be decided legally, which it hasn't been yet, but it can be, right? So we still, then we have to go and say, well, who is entitled to a remedy for that essentially? Who's in the class and, therefore, it can get a remedy? And I still don't understand why, how you're telling me that that is conceptually, as a matter of predominance law, different from the question of who bought the milk. Well, let me back up one step. Okay. What we're here on is what standard has to be applied. Right. So we're not talking about, there is no absolute per se rule in the law that says all purchaser classes get to get certified, period, regardless of a predominance test, regardless of a superiority test. The whole point of the Briseno decision is that courts had erected this gate before you even got to Rule 23 and said this is an up or down requirement. If you haven't shown it to us, you don't get to get in. And the problem with that, what this court said, is because there are things in Rule 23 that call for you to do those comparative assessments. It may be in a low-cost product case where people are paying $7 for a bottle of vitamins that don't do what they say, and every purchaser got the label, that the individualized question of saying, all right, did you buy or did you not buy, and by the way, in a case in which aggregate liability is not going to change based on who's in the class or who's not, because we know who sold it, that may not be a case where an individualized issue would predominate. But what we're saying is that the logic of the Briseno decision and simply the text of Rule 23 and how it's been applied by other courts of appeals. Your whole argument then rests on the notion the judge refused to apply predominance at all. That's correct. Not how he applied it. That's absolutely correct. And I strongly believe that. I mean, I think that's very clear from the decision that when he does — here's the easiest way to say it. The judge never said I have an individualized issue of figuring out who received the relevant sales illustration. I am going to weigh that against the issues that I found common, and here's how I think it came out. Instead, at the excerpt of Record 12, what he says is the courts have to address these concerns under the manageability criterion of the superiority requirement. Therefore, the concerns motivating the court's prior decertification order are no longer valid justifications to find a lack of predominance. But I think I'm coming from the same viewpoint that Judge Berzon is coming from. How is that any different from trying to determine who the class members are in her purchase hypothetical? I mean, the question is, did you receive an illustration before you applied for your policy, right? My response is that what we're talking about in those questions is subsuming an answer to that question. It is subsuming the answer that we have purchaser classes, so it can't possibly be a predominance problem. But you're hypothesizing an inquiry which would involve an examination of each putative class member to first ask, did you receive and rely on this illustration before you applied for the policy? And what — Right? Right. Well, all I'm saying is that a judge — Two arguments. My first argument is that a judge has to actually articulate that and do it in the predominance inquiry. The judge may find that it doesn't predominate, that that individualized issue does not predominate. The Briseno decision does not erect a rule that these get automatically certified. And, in fact, what it does, and the Mullins decision it relies on, says actually low-cost product cases that deal with purchasers, there are lots of reasons why that may not be an individualized issue that would defeat predominance. But what's wrong with the district court presuming that every member of the class who got one of these illustrations relied on it before they applied for the policy? I don't think there's anything wrong with that. I think what's wrong is saying I don't have to ask the question of who was exposed to one of these illustrations, an element of the case, because I put it in the class definition. I still have to — it is, admittedly, still an individualized — But why couldn't a claims administrator in a class action simply ask of each putative class member, did you receive an illustration before you applied for the policy? Well, for all the reasons — And if the answer is no, then you're not a member of the class. If the answer is yes, you are. Well, no, because every time someone answers that, liability goes up by tens of thousands of dollars. We have an opportunity to contest that. And this is what — I just want to be very clear. What Judge Selma did here is, in fact, what decisions like Mullen's say you should do, which this court followed in Brasenia, which is to say don't refuse to certify it outright. Certify it, because you've got a lot of procedural tools under Rule 23C and D, and he did. And after several months dealing with it — this is before we came up here the last time — he said, sua sponte, order to show cause why this shouldn't be decertified. He had tons of briefing on it, and he said, I have now examined all this. These individualized issues really are going to be the main event. They completely overwhelmed the case. What went to trial? What went to trial were class claims on omission claims, both fraud and UCL, and individualized claims on illustration, which is the equivalent of this one. And those claims were that it was, as plaintiff says, it's a bait-and-switch claim. They said that these same illustrations, these sales illustrations, were deceiving people into purchasing the policies. And they say, and this is in their class certification briefs below that are in the record here, the reason it was brought that way was because they needed to negate the other types of disclosures that came at the time you got your batch illustration. He had decertified that. It went to trial individually. Jury came back in three hours for the defense. Judge wrote a 70-page opinion in our favor. So. Do you want to address the other questions? Yes. Oh, thank you. And I did want to try to preserve three minutes for rebuttal, but I see I'm almost there. We'll give you a couple minutes. I will proceed as the Court wishes and with whatever grace you give me. Okay. But can I just one sentence to finish up that before I turn? My point is that I think it is you can't write the predominance requirement out of the rule for things that are actual elements of the claim. It may be that the District Court may come out exactly as both of you have said, that you think they should come out in cases like purchaser cases. But that is in a case in which it has already been certified. They've seen that it's an individualized issue. They understand how it weighs in all of this. They actually have to do that analysis. And this Court would be in conflict with a court like Petrobras in the Second Circuit if it just wrote it out. Now, turning to theirs, we believe very strongly that this is procedurally improper. There is an entire body of case law that says that if a reconsideration. Well, you know, looking closely at those cases, it seemed to me that those cases dealt with, first of all, I'm not at all sure that this is only an appeal from the motion to reconsider. We can talk about that for a minute. But second of all, those cases seem to be situations in which the motion to reconsider was not filed within the 14 days before the original order became final. Is that accurate, that all of those were filed well later? That's absolutely accurate, Your Honor. And that seems to me to matter in the sense that this is sort of an ordinary motion to reconsider of the kind that you have in litigation in general, which suspends the finality of the original order. And I gather that you're not contesting the notion that if this was a, or are you, that if this is an appeal from the class certification limitation, that it would be timely. Are you contesting that? I am. So let me, you're right. The cases don't deal with ones because they're trying to figure, it's someone trying to figure out whether it's timely or not. So to get to your point, the, first of all, we think that they are very specific about what they were appealing from the class. Well, but what they meant was we're not, we already essentially won on the first motion to reconsider on the class as to what he relied on. But they are complaining about the same thing, i.e., that he didn't certify the class. And the reason that they were concentrating on the motion to reconsider is because that's where he brought up this thing about the purchase and when the purchase occurred because he made a factual mistake the first time. So I don't know that they weren't appealing from the whole banana, so to speak. Okay. But here, so I want to address both. So I know you're going to, you may, because of your question, may want to disagree with me halfway through the first, my first point. But I'll try to get both out. The first is that Rule 23-F is very specific. It talks about what orders are appealable. And they were very specific. The cover of their Rule 23-F petition, the conclusion, the relief they asked for, was grant an interlocutory, grant interlocutory review of this. And there's a whole body of case law that goes back two decades that says if it's a reconsideration order and you're not granting it and it doesn't change the class in any way, that's not an appealable order. Now, their argument now that we've gotten on appeal and you've asked us to brief the procedural propriety is, well, then just view it as if it were an appeal of the class certification order itself. Apart from that not being what it was, then it would be untimely. Why? They filed within 14 days. The judge denied it. No, he didn't deny it. He did. Wait. He said denied without prejudice to renewing the motion. It wasn't saying they had to file a new motion. They didn't file a new motion. But that, first of all, he did deny it. He denied it. But he didn't finally deny it. He did not finally deny it. And they are on the clock for Rule 23-F at that point. They know. They should be coming here within 14 days. They took a chance by saying we're going to keep proceeding in the district court. More importantly, this very judge, Judge Selma, he has a decision saying that when I say re-notice, that means refiling. And this is really ñ Well, he didn't make them re-file, and they didn't re-file. They did re-file. Well, they re-noticed it with the actual supporting affidavit that was the reason they failed to file it before. And each side, then we were allowed to file a new brief. But he didn't re-file it. We were allowed to file a new brief after that. They were allowed to file a new reply brief. And this is what Judge Selma said in Fremont Reorganizing Corp., which is at 2012 Westlaw 13015133. He says that a party re-noticing a motion previously filed may rely on the previously filed supporting documents. However, this act is still in effect the filing of a new motion. Since the re-notice of the motion acts as a new motion, defendants were authorized to file an opposition to the motion. And that's exactly what happened here. We were allowed to file a new opposition to the motion. They were allowed to reply to it. The courts of appeals have made clear that Rule 23-F is purposely unforgiving. There was nothing stopping them from coming up. So your argument is they should have filed a protective notice of appeal sometime between September 10 and September 24? Absolutely, if they wanted to come up. Yes, that's right. Would that have divested the District Court of Jurisdiction over the other re-noticed motion for reconsideration? I don't believe so. Rule 23-F says that it doesn't divest the District Court of Jurisdiction. That's odd, isn't it? It's because of the purpose of 23-F that we don't want things to slow down. Many courts do. You know, they don't proceed any further. Well, but how could something be up on appeal before us, and then the District Court's entertaining a motion for reconsideration and could change it? It may well be. Your Honor, I actually don't know how courts have dealt with that issue. I think we have some case law that says that doesn't deprive the District But at the same time, I think the premise behind your question is, well, that puts them in a pickle. The pickle is the local rules are really clear what you have to do when you file a motion in that court, and you have to abide by all the local rules. If you don't and the judge denies your motion, then at that point, okay, I've got to go up and I've got to make these arguments here. Your Honor, we're well over time, but could you give me two sentences about if we thought it were timely? Sure. I think that's a hard question. What the district judge's ruling was that the purchase was final when they received the application, which just, I mean, I understand why you want that, which is so that the insurance company is bound at that point, because how else are you going to communicate? But on the other hand, with this intervening statutory rule that says that there has to be an illustration and they have to sign it, don't they have to sign it? Sign the illustration, yes, Your Honor. Right. So how could it be final before those two things happen? So first of all, we think it is, but our argument's actually much different. I think that the judge never said, hey, look, I'm issuing a rule that it is legally impossible to form a contract. It is legally impossible to form a contract after you have reviewed the illustration, or it is legally impossible to rely on illustrations during the free look period. He doesn't say that anywhere. That's putting a lot of language into what he said. What he is saying is he's saying, I've heard this case for many years. This is not plaintiff's theory. Plaintiff's theory is about the purchasing decision. The purchasing decision happened during that pre-sales illustration time period. He is saying that when it comes at the exact same time of the policy delivery in a batch illustration, that's not plaintiff's theory. And there is no evidence in this case. Four out of the five plaintiffs never reviewed their batch illustration. The fifth one, in a deposition, said she couldn't remember whether the ---- Where does the term batch illustration come from, by the way? Did you create that? We have been using shorthand for many years in this case at this point. So batch is that the first ones, the sales illustrations, are generated using our company's software but are provided by independent agents and brokers. The batch are printed out with these batches of documents that get sent out to the agent to give at the time of policy delivery. And so what he is saying is this isn't their theory. There is nobody here who claims to have ever relied on a batch illustration in making a purchasing decision. And, in fact, at that time, there is a very different series of disclosures. You also have a buyer's guide and a policy at that time. That's why they brought a bait-and-switch claim before, because they wanted to say we were baited in by the sales illustrations. By the time we got the last illustration, the policy, the buyer's guide, the buyer's guide explains clearly what this guaranteed value, guaranteed interest is. The only plaintiff who even claimed to have reviewed her sales illustration was asked about that. It's in the buyer's guide. It's there. So our contention is that it certainly was not an abuse of discretion to say that when we have sales illustrations that depict how you're going to use the policy for income, that's illustrations that don't. When you have plaintiffs who claim to have relied on the sales illustrations in making their purchasing decisions, as we know from the three-week trial he sat through and heard all the plaintiffs talk about this, but we don't have anybody who says we have four of the five plaintiffs who got batch illustrations but never saw them, and the fifth can't say that she relied on it in making her purchasing decision. And these are different sets of disclosures, because not only are the illustrations different, but you have a whole bunch of other disclosures. It couldn't have possibly been an abuse of discretion to say I'm keeping those people out of this case. Okay. You're way over time, and I'm not sure what we're doing with rebuttal here. Good morning. May it please the Court. I'm Brian Brosnahan, Counsel for the Plaintiffs in the class. I'd like to begin by correcting the representations that were made previously. Everyone who bought these policies received an illustration that violated the statute. The Court has already found that every illustration violated the statute, both the sales illustrations and the batch illustrations, because they are right. But we're only talking about the – we're not talking about the batch illustrations here. Well, potentially we are if we go to your appeal, right? Yes, on the cross appeal, and I'd like to start with the cross appeal, because it does move to their appeal. But everyone did not receive a pre-application illustration. That's correct. And why is that? Well – The statute doesn't require it? No, the statute doesn't require it. Some customers may listen to the sales pitch. The agent may not present an illustration to them. I see. So the statute doesn't require that, but it does require that. The statute does require that they get the illustration eventually, and then it gives them at the time of delivery, no later than delivery, and then it gives them at least 10 days to review the illustration before deciding whether they want to commit to the policy. All right. That's a trumper. Well, commit to the policy or rescind the contract. Either way, they're not legally obligated on the policy if they invoke the free look statute. But the insurance company is. The insurance company is. It's essentially a one-way dialogue. If this was life insurance and they died five days in and hadn't rescinded, then the insurance company would have to pay on that. That's true. It's essentially like a one-way option. The customer has the option to say, I don't want to be bound by this policy until the free look period expires. Meaning they get their money back? Yes, until the free look period expires. But they have to have paid before that? Typically, they would pay at the time of delivery or even some people pay at the time of application. Now, the free look statute is essentially a trump card against all of their arguments because nobody can be legally obligated on these policies until they've had an opportunity to review the illustration and the policy. That's the entire purpose of the free look statute. Isn't it? I mean, it's the same as we see in consumer loan financing where you have three days to back out of your home mortgage loan once you sign all the papers. But that doesn't mean that you haven't entered into a binding contract. It just gives you a unilateral right to rescind it if for some reason you change your mind. That may very well be. Isn't that the same situation that we have here with these policies? I'm not familiar with those particular statutes, but I'll accept that it is the same thing. But it doesn't matter because what's important is, and the insurance commissioner and the attorney general have pointed this out in their amicus brief, the consumer can rely on the illustration in deciding not to return the policy. Yes, but the problem is, as I understand it, is how is this case structured to begin with? In other words, as I understand their argument, it isn't that you're not right about all that. It's that it's not what you sued about. No, I don't think that's true, Your Honor. I mean, we challenge these illustrations as containing misrepresentations in violation of the illustration statute. And these claims are not bait-and-switch claims anymore. These are pure statutory claims, and the trial court already found that all of the illustrations, the batch and the sales, violate the statute. And they misrepresent, for example, that the guarantee. They already found that? Yes, you did, on summary judgment. I see. And he found it with respect to all of the illustrations because the batch and the sales illustrations are identical with respect to the claims in this case, one of which, for example, is that they misrepresent that there is an annual minimum guarantee of 2% interest. In fact, it's not an annual guarantee. It's something else. And he found that how they presented it violated the statute. So if I get an illustration before I apply, I can be misled by that. I can be equally misled by that when I get my illustration at the time of delivery, then I read the illustration and decide not to return the policy. But the damages aren't going to be any different. Do people receive the initial illustration and then a batch illustration separately? Or some receive a batch illustration, some don't? That's correct. And some don't receive one up front, but they do receive a batch. Everyone has to receive one, no later than delivery of the policy. So damages, when you say that these are all violations, whether they're the up front or the batch illustrations, it's not going to affect damages because the damages are presumably the same either way. Correct. But if we find that you did not properly appeal the certification order, then the batch illustrations are not going to be part of the class action. Is that the correct status? If the appeal is rejected, then the batch illustration group, about one-quarter of the total people would not be part of it. But for the named plaintiffs, they would be. They'd still have those claims. That's correct. And the district court judge has already said that's still a violation. Yes. Okay. And with respect to the procedural propriety issue, there are two reasons why our cross appeal is proper. First, as Judge Berzon referred to, the whole banana idea, that what we're appealing is both the original certification and the reconsideration order. When the reconsideration motion was filed within 14 days of the original certification order, in the language of nutraceutical v. Lambert, Supreme Court decision, it rendered the original decision no longer not final for purposes of appeal. When the district judge denied without prejudice the motion for reconsideration and said you can re-notice the motion, that didn't all of a sudden render that original order final. I thought it did. If it didn't make any changes to the original order, I thought it did make it final. I'm referring to the denial of the reconsideration motion. Yeah. Denial without prejudice. Yeah, but there was no change, right, no material change. It preserved the status quo. And because you hadn't complied with the local rule, you re-noticed your motion,  Well, we had already filed the motion timely. To reconsider. Yes. Yeah, and then by my calculations, you had until September 24 to file a notice of appeal, and you didn't do that. The notice of appeal came later. The notice of appeal came within 14 days after the order on reconsideration. But then how do I square that with the Supreme Court cases that say, and our Ninth Circuit cases that say, you know, Rule 23F appeals are unforgiving, and we don't allow district courts to extend the deadline, we don't recognize equitable tolling. I mean, I think you've got an uphill fight on the timeliness of your cross appeal. Well, then I'd address the second reason why the order is proper. And all of the cases cited by both sides, I'm sorry, why the appeal is procedurally proper. All of the cases cited by both sides make clear that if you have a material change, the motion for reconsideration that results in a material change to the original certification order, then that order is. In the class, though, and this resulted in no change in the class. I mean, in other words, those cases rest on the language of the statute, 23F, which says that you can appeal the certification or denial of certification of a class. And they say if you don't change anything about the certification, you're not granting it or denying it. So it depends on the bottom line, not on the reasoning. You're trying to appeal the reasoning of the motion to reconsider. And I understand why you've done it. I mean, because and but certainly it would have been better had you appealed the original certification or limited certification in a timely manner. And then you could have relied or not relied on what he on what his reasoning was. But this way you. Then we would have had to bring to this court's attention the factual error that the trial court readily corrected on the motion for reconsideration. Well, no, you could have also. You would have filed a second notice of appeal and then moved to consolidate with the first or dismiss the first appeal and pursue the second. But no, but then the theory is there wouldn't be an appeal on the second. That's the problem. That's the dilemma you have. There wouldn't be an appeal in a second because it wasn't changing any bottom line. Well, I think if we look at the cases, there's not a single case that defines sort of what the status quo language refers to. Well, yes, it does. It refers to the language of 23F. That's your problem. In other words, the reasoning here is that 23F is about certification and decertification and not about anything else. And the district court didn't change the certification. There is not a single case that addresses this fact pattern. Well, our cases say there has to be a material change in the status quo, and there isn't one here. Well, I would say that whether we have an error of law that is an appealable error of law is a change in the status quo. Previously, we didn't have such an error of law in the original certification order. With the reconsideration order, we did. And I would direct the Court to, for example, the Carpenter v. Boeing case, which says that if a reconsideration order results in a new order, then to the extent it modifies the previous order with a material change, it is appealable. And the Driver v. Apple, Illinois case says the same thing. We don't actually have a case saying this, Julie. The other circuits do. But do we have a case about appealing from a motion to reconsider? The Lambert case on remand deals with it. But that was not a presidential opinion. So do we have it? It's not a presidential opinion, and there was no material change. The only change in the order was if you have to give notice. I'm just asking you a factual question. Does this circuit have a? It does not, as far as I know, Your Honor. And here there was a material change. In effect, what the Court did was it vacated its previous decision. It's with respect to the Batch Illustration Group. It said I was incorrect. My rationale for denying certification as to the Batch Illustration Group was incorrect. But then it adopted a new reason for denying certification. In effect, it vacated the prior rule. Do you want to address the other side's appeal at all? Thank you, Your Honor. I'll be happy to do that. I think the questions raised by the panel go to the difficulty and reasons that we opposed their position. But I want to make the point that here the Court found seven common ‑‑ all of the important issues in the case were common. violation of the statute, reliance, injury, materiality, restitution, injunctive and declaratory relief. How did he find reliance? Because it seems to me you could have wide variance on which plaintiffs relied on. Well, it's important to understand, Your Honor, that under California's UCL, absent class plaintiffs need not prove reliance. Only the named plaintiffs need to prove reliance. This was held in In Ray Tobacco, two cases by the California Supreme Court. It's been echoed by this Court in cases like Stearns v. Ticketmaster. Only the named plaintiffs need to prove reliance. Because of the California statute? Yes. Okay. Only the named plaintiffs need to rely. And what we have here is that the teachings of Briseyno have to apply under the predominance inquiry as well as under the superiority rubric. Otherwise, those teachings would be effectively useless. At least where you have many common issues, as we do in this case. Now, I think the teachings of Briseyno, as applied to predominance, are that where you have many common issues in the case, then when you have individual class membership issues, courts are not supposed to throw up their hands. They're supposed to roll up their sleeves. And that's essentially what Judge Selna realized when he read the Briseyno opinion. That the amount of effort that this circuit expects district courts to undertake when you have a heavy dose of common issues, as we have in this case, and he then found that the need to make individual class membership determinations did not upset the predominance of common issues that he found throughout the rest of his opinion. Everywhere else in that opinion, he's finding common issues on reliance, on violation, on injury, on restitution. And I think I've even inadvertently omitted one, rescission. He found those were all common issues. Now, this court should affirm on any basis that is supported by the record. So even if Judge Selna didn't correctly articulate the relationship between Briseyno and predominance, it doesn't matter because on this record, you have a heavy predominance of common issues. You've got only one significant issue that is not common. That's the class membership issue. And that is an issue that is individual in every case. It's individual by definition. Is this person a member of the class? And in Briseyno... Well, but sometimes it's very easy to demonstrate and sometimes it isn't. That's correct, Your Honor. I mean, you're dealing, for example, with a car purchase issue. I mean, people have documents to demonstrate whether they bought a car. It becomes a problem, you know, when you're dealing with... Well, and in this case... Or an employee. I mean, there can be issues, but... Yes, Your Honor. In some cases it's easier than in others. In this case, LSW has a document called an agent's report. And the agent's report is supposed to indicate whether an illustration was used, a sales illustration used. There's one in the record, I believe, as an exemplar. I think it's SCR 517, if the court wishes to take a look at it. If LSW's records were complete, all you'd have to do is just look at that document. In some cases, LSW's records are not complete. And so for some people, they would have to submit a declaration or an affidavit to establish their membership in the class. And if they don't, well, then obviously LSW would prevail as to those people because we bear the burden of proof. But we submitted three proposals from e-discovery vendors as to how the class membership issue could be resolved with respect to three quarters of the class. And then as to the other quarter, they would be required to submit declarations. And, of course, in some of these other cases, such as... Meaning the quarter would be the part that may or may not be part of the class based on the badge. Yes, Your Honor. And in some of these cases, everyone would have to submit a declaration. But in this case, that's not the case. And as I've said, we think that as applied to predominance, and LSW does not appear to be saying that the teachings of Bursino are irrelevant to predominance. And as Judge Berzon noted, it's a very similar inquiry, whether you're looking at superiority or predominance. But here the judge made a specific manageability determination in the context of superiority. But his conclusions seem directly pertinent to any predominance determination as well, which is, yeah, it might be a pain, but it's not that big a pain, essentially. That's right. Right. That's right. He said it's not. I think because we now have the teachings of Bursino that courts should roll up their sleeves instead of throwing up their hands, that's what he decided to do. So let me ask you. If we were to affirm and say the district court did not abuse its discretion in certification, and you said the district court has already found violations, what's left to do? He has to go back. Are damages different based on the plaintiff, based on the amount of the policy? What would happen? We submitted formulas for how damages would be calculated. It's actually technically restitution. Would there be a jury trial on that inquiry? No. Under the UCL unfair competition law, it's a judge trial. And we also have a claim for rescission. The judge rejected their arguments that that's not available. He also rejected the argument that counsel referred to that this case is about the purchasing decision. That was an argument that they made. It was rejected in the reconsideration order. I believe he notes that, hey, I've already rejected that. The fact is that every single one of these class members received an illustration that is identical with respect to all of the claims, and every one of them should be included in the class. I don't ‑‑ I have to note something about Rule 23. Rule 23, Rule 23F, in the advisory committee notes, I mean, it's not a rule that traps this court into denying a meritorious appeal based on hypertechnical strictures. The advisory committee notes say this court has unfettered discretion and the court can accept and appeal on any basis that the court believes is persuasive. Well, Lambert was somewhat inconsistent with that view, is it not? Lambert was pretty tough. Well, except that when it comes to motions for reconsideration, Your Honor, there's nothing in the rule. that refers to motions for reconsideration. And here, the motion for reconsideration resulted in an order that adopted a basis for excluding one quarter of the class that had never been made before, that we could not have raised before. And there's nothing about Rule 23 that requires this court to say, oh, we're not allowed to look at that. We're not allowed to look at that. There's just nothing in the rule. There was a material change in the order, and none of the cases say that when a court materially changes its rationale, then you still cannot appeal that. All right, your time is up. I guess I will give your opponent a minute or two as a rebuttal. I'm not sure exactly why, but you're sitting there, so. I will attempt not to abuse the privilege you are giving me. On the cross appeal, what I want to say, the unfettered discretion argument, there are two different parts of Rule 23. We understand that. Okay, good. Second, the cases are clear from all the circuits about that there has to be a change in the certification. The Matz decision from the Seventh Circuit is public. But we don't have a case. You don't have a case. You only have the unpublished one in the Lambert case. That's absolutely true. But all of the courts are unanimous on this. And the cases are not dealing with a timely local rule-oriented motion to reconsider as such. So this is the question. What should they have done here? They should have filed a protective appeal. And then what? Because, in fact, if they had appealed from the original certification order, there was a factual error in it. And so then there would have been a pointless reversal, or there could have been. So they filed a motion to reconsider. And let's assume that on your theory, I understand there's a timing problem with it. But suppose there wasn't a timing problem with it. Suppose that they hadn't had this glitch where they had to file it twice. You would still say they couldn't appeal from the motion to reconsider. So what should they have done? Sorry, I think the hypotheticals crossed each other in the sense that what I was going to say, and then you can tell me whether this doesn't answer the question, is I think you're asking the question at the wrong point in time. The answer to the question is they should have filed a motion that complied with the local rules, and we would have none of this problem. You mean the motion to reconsider. Then there wouldn't be a problem because the original one wouldn't have been final. That's right. And at the time then when the motion to reconsider was decided as it was decided, they could have appealed, but you would still say they had to appeal from the original certification. I would say they have to appeal from the original order, but I don't think that would prevent you all from reaching all of the issues by which were decided in either one of them. You have to appeal the right order, but I think they all come up. On our appeal, the two short points I wanted to make is that it can't be that just putting something in the definition absolves a court of predominance. Then MASA would have come out differently. You could have said, oh, as long as we just put it in the definition that everyone, it's only the people who received this from HONDA, now it's not a predominance issue anymore because we're going to litigate in common on behalf of everyone. The judge did look at many common issues, and he also did do the, in the superiority analysis, he did the exact, you know, administrability issue that you're talking about, and he concluded that it really, you know, it was a problem, but not a big enough problem. So that's my second point, is that when the judge looked at it through the predominance lens, when he decertified it, he said, these overwhelm. When he looked at it this time in the superiority lens, I would say that if you read his opinion, he did not say that, oh, I certainly concluded superior. He said, LSW has raised many valid concerns, but the Ninth Circuit says to me that on the superiority prong, there are these other options I can use. Of course, let's remember, he thought about all these options, he certified a case, he went through it, and he did exactly what cases like Mullins and Brasenia, which relies on this say to do. Don't refuse to certify it. Certify it. See if you can live with it. See if it'll work. He previously concluded it didn't work, and it's very clear from his decision here that the only reason he changed his mind was because he thought it could only be in superiority, and he thought that this court had said, which, by the way, in a passage that only dealt with an argument about whether individualized damages issues can preclude class certification, which isn't the issue here, he said, I think this court has barred me from even thinking about that in terms of superiority, but I would encourage you to look at the Petrobras decision because it does show you how there are two different comparative assessments that get done under each one and that it is the district courts that are supposed to be exercising discretion in the first instance, and we just think it would be legal error to have a decision that writes the predominance requirement out for key elements in a case. We don't think that predominance is satisfied, but we think that's for the district court to decide in the first instance. Okay. Thank you both very much for a very helpful argument in another complicated case. Thank you very much.
judges: Berzon, Tallman, Nelson